**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Deanna Evans, | ) | Civil Action No.: 3:16-cv-01215-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| International Paper Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      Plaintiff Deanna Evans filed this action against her former employer, Defendant International Paper Company ("Defendant" or "IP"), alleging that she was subjected to (1) retaliation for engaging in protected activity and (2) a hostile work environment because of her race and gender, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. (ECF No. 1-1 at 22 ¶ 75–25 ¶ 96.) Plaintiff also alleges a claim for pay discrimination in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d). (ECF No. 1-1 at 26 ¶¶ 97–104.)

      This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 64.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Kaymani D. West for pretrial handling. On February 12, 2018, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court deny in part Defendant's Motion as to Plaintiff's claims alleging a hostile work environment and grant the Motion as to the remaining claims. (ECF No. 82 at 48.) Both parties filed objections to the Magistrate Judge's Report and Recommendation, which are presently before the court. (ECF Nos. 88, 89.) For the reasons set forth below, the court **ACCEPTS IN PART AND REJECTS**

**IN PART** the Magistrate Judge's recommendation and **GRANTS** Defendant's Motion for Summary Judgment as to all Plaintiff's claims.

## I. RELEVANT BACKGROUND TO PENDING MOTION

The facts of this matter are discussed in the Report and Recommendation. (*See* ECF No. 82 at 2–12.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of her claims.

Defendant is "one of the world's leading producers of fiber-based packaging, pulp and paper, with 52,000 employees operating in 24 countries." *International Paper Company*, http:// http://www.internationalpaper.com/company/about-international-paper (last visited Mar. 29, 2018). "IP hired Plaintiff [a black female] as a Process Engineer in Vicksburg, Mississippi in May 2007 and Plaintiff began working at IP's Eastover, South Carolina Mill, in November 2009 as an Engineer II." (ECF No. 64-1 at 3 ¶ 4[1] (referencing ECF No. 64-4 at 3:12–18 & 29:22–24).) "Plaintiff's qualifications in her field include a Six Sigma green belt certification, American Society of Quality Certified Quality Auditor Certification, ISO 9001 & 14001 Lead Auditor Certification, Bachelor of Science degree in chemical engineering, and Master's degree in Business Administration from Gardner-Webb University." (ECF No. 82 at 2 ¶ 4 (citing ECF No. 64-5 at 4–5).) "During the relevant time period [of Plaintiff's employment], Hai Ninh (Asian male) worked as the Mill Manager at Eastover Mill." (*Id.* (citing ECF No. 64-7 at 6 ¶ 11).) "Paul Varadi (Caucasian male) was the CPS Business Unit Manager." (*Id.* (citing ECF No. 64-7

---

[1] In her Order regarding Dispositive Motions: Specific Instructions and Briefing Schedule (ECF No. 62), the Magistrate Judge required Defendant as movant to submit numbered paragraphs of undisputed material facts. (*Id.* at 1.) Plaintiff as the nonmoving party was allowed to offer facts to demonstrate the existence of a genuine issue. (*Id.*) In this Order, the court cites to undisputed facts unless otherwise stated.

at 2 ¶ 1).)  "Gary Nyman (Caucasian male) was the Finished Products Department's Business Unit Manager."  (*Id.* (citing ECF No. 64-7 at 3 ¶ 2).)  Soon after starting at the Eastover Mill, Plaintiff heard comments from two white males, Rocky Mucci and Matthew Vale, that "they didn't want me and they were forced to keep me."  (*Id.* (citing ECF No. 71-1 at 25:139:20–24).)

"On June 23, 2010, Plaintiff was promoted to an Area Process Manager (APM) position" in chemical additives.  (ECF No. 82 at 3 ¶ 6 (citing ECF No. 64-4 at 29:25–30:10).)  In this role, "Plaintiff headed major projects at Eastover Mill to achieve International Standard for Organization ("ISO") 9001 and ISO 14001 certifications, the latter of which allowed Eastover Mill's products to be sold in Europe."  (*Id.* at 4 ¶ 7 (citing ECF No. 64-4 at 18:7–19:9 & 31:1–24; ECF No. 64-9 at 2 ¶ 3).)  "Varadi worked closely with Plaintiff as a management sponsor of these ISO projects."  (*Id.* ¶ 8 (citing ECF No. 64-7 at 2 ¶ 2).)  "Plaintiff was the face of the projects and always presented ISO information at mill-wide meetings."  (*Id.* ¶ 9 (citing ECF No. 64-4 at 46:13–18).)

In October 2013, Varadi selected Plaintiff to fill a newly created position "of Technical Quality Leader ("TQL"), which meant she was responsible for the interface between [Finished Products Department] FPD and the customer to ensure that the products consistently conformed to the customer's specifications.  (*Id.* ¶ 10 & at 5 ¶ 11 (citing ECF No. 64-7 at 3 ¶ 3).)  Varidi "selected Plaintiff because he had seen her performance on the ISO certifications, they had worked closely together on the ISO 9001 project, and Varadi wanted to work with Plaintiff."  (*Id.* at 5 ¶ 11 (citing ECF Nos. 64-7 at 3 ¶ 4 & 64-4 at 24:4–25).)  "While working under Varadi, IP's CEO awarded Plaintiff the prestigious Chairman's Coin award and a Key Driver Award."  (*Id.* ¶ 12 (citing, *e.g.*, ECF Nos. 64-4 at 25:22–24 & 64-7 at 3–4 ¶ 5).)  "Varadi sponsored Plaintiff for these awards and worked to ensure that management at Eastover Mill support[ed]

her as well." (*Id.* (citing ECF No. 64-7 at 3–4 ¶ 5).) On January 10, 2014, Plaintiff received a

"Results Exceeded Commitment" rating on her Contribution Summary Assessment ("CSA"), an

annual performance evaluation prepared for 2013 by Varadi. (ECF No. 64-1 at 5 ¶ 13

(referencing ECF No. 64-5 at 7–12).)

In October 2014, Plaintiff was one of several employees interviewed by Defendant's

Human Resources Manager Sabrina Townsend regarding complaints of discrimination

originating from the FPD. (ECF No. 71-12 at 11:40:12–22 & 13:46:12–48:9.) "Plaintiff told

Townsend about the 'uninclusion' she experienced from Nyman and how he did not engage with

her and give her leadership roles as he did White male employees." (ECF No. 82 at 5 ¶ 15

(referencing ECF No. 71-1 at 46:224:2–47:227:6.) More specifically, in defense of her

allegation that Nyman was racist, Plaintiff stated to Townsend the following particulars:

> I told Sabrina the behaviors. When I go to approach him, he looks and does not
> respond. When my white male counterpart come and talk to him, he's feeling
> very comfortable. He's willing to help and engage. He's willing to help them
> through whatever situation or troubleshooting problems they may have. He
> doesn't say any slurs to them at all, and he's been very supportive. I have told him
> several events that w[ere] issues in finished products, and he says, oh, that's just
> Rocky. I can see you being targeted.

(ECF No. 71-1 at 46:224:21–47:225:7.)

> Okay. Every time I have a communication with Gary, it's always negative. You
> promote people up way too fast. The pay salary, I was just there not too long ago.
> I can see that you're being targeted. I would always go to the morning meetings
> and I would announce different things within ISO or quality. The room, the
> environment of the managers would come back and be very combative and try to
> say this is not your role or you don't have the right to say this, or Roy, he sits
> there. He doesn't say anything about it. I go to Gary and he says, well, I see you
> being targeted, but does not stop the behavior. His team managers have made
> comments during people reviews, these people act like they're from a shoot 'em
> up bang-bang neighborhood.

(Id. at 47:225:17–226:8.)

On January 21, 2015, Varadi met with Plaintiff to discuss her CSA. (ECF No. 64-7 at 4 ¶

8.)  During their meeting, Plaintiff "raised the issue that she felt that at times she did not get information passed on to her from individuals in the Finished Products [D]epartment, and that these individuals instead went to another CPS department colleague, Roy Cummings."  (*Id.*) After this meeting, Plaintiff contemplated resigning from her employment with Defendant.  (ECF No. 71-1 at 24:134:21–136:10.[2])  A week after her meeting with Varadi, Plaintiff met with Ninh. Plaintiff complained to Ninh about the environment at the Eastover Mill as follows:

---

[2]

| Q. | Did this meeting play into your decision to ultimately resign? |
|---|---|
| A. | Thoughts started to gather. |
| Q. | And what do you mean when you say, thoughts started to gather? |
| A. | Because I knew right then that my supervisor was not listening to me, nor creating an environment that I could be successful. |
| Q. | And was it your perception that he was not creating an environment where you could be successful? |
| A. | Yes. |
| Q. | Okay. Do you believe that it indicated that Mr. Varadi did not support you? |
| A. | Yes. |
| Q. | Do you feel like you were unfairly being criticized? |
| A. | Yes. |
| Q. | Do you believe that Mr. Varadi was saying these  things to force you to quit? |
| A. | Setting a platform, yes. |
| Q. | Why do you believe that? |
| A. | Because the one behavior of not listening when I was telling him exactly, was trying to go over the weekend.  He was telling me the comments that finished products was saying and also what their perception is, and it tied into my CSA at the end of the year. |
| Q. | And you believe that he was trying to force you to quit just six months after giving you an exceeds rating on your review? |
| A. | He created an environment that was not a win-win that overtime became very intolerable that forced me to resign. |
| Q. | When you say that it was intolerable, what was intolerable about it? |
| A. | Intolerable working with a group of people who are not accepting to work problems with you such as that, the example you specifically used. |

(ECF No. 71-1 at 24:134:21–136:10.)

> The other conversation was about the environment. I told him the environment is very uncomfortable. It's stressful. It's hostile. There is no support. It's not a win-win. And I went through several examples of the comments that was being said from finished products. The lack of inclusion, the comments around my natural hair, the comments around my afro. I pointed out different events through the customer visits, through troubleshooting, through representing of being part of a business meeting, like, for instance, this envelope, and told him that it is unbearable and it is not a win-win.

(ECF No. 71-1 at 42:168:19–33:169:8.) On January 30, 2015, Plaintiff received a "Results Met Commitment" rating on her CSA prepared by Varadi. (ECF No. 64-1 at 6 ¶ 18 (citing ECF No. 64-5 at 17–21).)

"On February 16, 2015, Johnny Barfield, a white male FPD manager, told Evans her nickname was Angela Davis, a black female with an afro." (ECF No. 71 at 33 (citing ECF No. 71-9 at 12).) "When asked why, he told Evans it was because of her she was a civil rights activist that was known for Black Panther." (*Id.*) Because Barfield's comment exemplified the behavior that she was continuously complaining about, Plaintiff tendered her resignation to Varadi, Ninh and Human Resources Manager Walt Partrich on March 10, 2015. (ECF No. 64-1 at 9 ¶ 30 (referencing, *e.g.*, ECF No. 64-5 at 3).) In her resignation letter, Plaintiff stated the following particulars:

> I am writing to submit my resignation from the position of Technical Quality Leader at International Paper effective March 24, 2015. It was not easy to make the decision to leave after seven years. Although my time with International Paper has been, on the whole, satisfying and productive; it also had its challenges.

> I would like to thank you for the great experience you have provided me and I believe I have fulfilled my duties to the best of my ability. One of the highlights of my career was implementing the quality and environmental management system that resulted in ISO 9001 & 14001 certification.

> If there is anything I can do to make this transition easier for the company over the next two weeks, please let me know and I'd be more than happy to assist! This includes assisting in recruiting and training my replacement.

Thank you again for the opportunity to work with International Paper. I wish you and the staff all the best with your future endeavors."

(ECF No. 64-5 at 3.)

On March 24, 2015, Plaintiff worked her last day for Defendant. (ECF No. 71-1 at 6:62:9–12.) Plaintiff participated in an exit interview conducted by Ninh and Partrich. (ECF No. 82 at 10 ¶ 36.) "[S]he reminded Ninh and Partrich that she had previously raised concerns about racially discriminatory actions, including comments about her natural hair, exclusion from client visits, a lack of inclusion and constant negative comments from white males in the FPD." (*Id.* (citing ECF No. 71-1 at 42:206:19–43:211:17).) "Plaintiff expressed frustration that no action had been taken in response to her complaints." (*Id.* (citing ECF No. 71-1 at 42:206:19– 43:211:17).) "Plaintiff informed Ninh and Partrich that such treatment was very stressful and it forced her to resign." (*Id.* (citing ECF No. 71-1 at 42:206:19–43:211:17).) "Plaintiff stated that she reminded Ninh and Partrich of the names of the personnel she believed were creating a hostile work environment—Varadi, Cronin, Rocky Mucci, Johnny Taylor, and Nyman." (*Id.* (citing ECF No. 71-1 at 42:206:19–43:211:17).)

On July 7, 2015, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC"). (ECF No. 71-6.) In the Charge, Plaintiff alleged that she suffered retaliation and was discriminated against because of her race and sex in violation of Title VII and South Carolina Human Affairs Law. (ECF No. 71-6 at 2.) In the Charge, Plaintiff stated the following particulars:

I was employed by Respondent since October 2007. My last position was Technical Quality Leader. During my tenure at Eastover Mill, I was subjected to race and gender discrimination, harassment (hostile work environment) from September 5, 2014 through March 24, 2015 because of my race and gender. Respondent treated similarly situated white and male employees more favorably. I complained to my supervisors and Human Resources about such treatment.

Despite these complaints, nothing changed. There were no corrective actions given to the individuals who created the hostile work environment and my employer failed to stop the disparate treatment. I was subjected to an emotional roller coaster that adversely affected my health. I felt I had no other option, but to resign due to conditions being intolerable. I was constructively discharged from my position on March 24, 2015.

I therefore believe I was discriminated against because of race (black), gender (female), and retaliated against for opposing discriminatory treatment, which is declared unlawful by the South Carolina Human Affairs Law and Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 71-6 at 2.)

Thereafter, Plaintiff filed an action on March 18, 2016, in the Court of Common Pleas for Richland County (South Carolina) alleging claims for (1) hostile work environment and discrimination on account of race (Count 1), hostile work environment and discrimination on account of gender (Count 2), retaliation (Count 3) and pay discrimination (Count 4). (ECF No. 1-1 at 22 ¶ 75–25 ¶ 96.) After removing the matter to this court on April 19, 2016 (ECF No. 1), Defendant answered the Complaint on April 26, 2016, denying its allegations. (ECF No. 5.) On June 5, 2017, Defendant filed its Motion for Summary Judgment. (ECF No. 64.) Plaintiff filed opposition to the Motion for Summary Judgment on July 7, 2017, to which Defendant filed a Reply in Support of Defendant's Motion for Summary Judgment on July 21, 2017. (ECF Nos. 71, 73.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge issued her Report and Recommendation on February 12, 2018, recommending that "Defendant's Motion for Summary Judgment, ECF No. 64, be denied as to Plaintiff's claim for constructive discharge based on a hostile work environment and granted as to her Title VII retaliation and EPA claims." (ECF No. 82 at 48.) On March 9, 2018, the parties both filed objections to the Report and Recommendation. (ECF Nos. 88, 89.)

## II.     JURISDICTION

This court has jurisdiction over Plaintiff's claims via 28 U.S.C. § 1331, as they arise under laws of the United States, and also via 42 U.S.C. § 2000e–5(f)(3), which empowers district courts to hear claims "brought under" Title VII.

## III.     LEGAL STANDARD

A.     The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error.  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  *See* 28 U.S.C. § 636(b)(1).

B.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party.

*Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV.     ANALYSIS

A.     <u>The Report and Recommendation</u>

In the Report and Recommendation, the Magistrate Judge first addressed Defendant's argument that Plaintiff "failed to exhaust her administrative remedies by not including in her Charge certain allegations asserted in her lawsuit." (ECF No. 64-1 at 15.) The Magistrate Judge determined that Plaintiff's Charge sufficiently "put Defendant on notice of all of her claims" and there was not a "failure to exhaust administrative remedies." (ECF No. 82 at 14.)

Next, the Magistrate Judge addressed Plaintiff's hostile work environment/constructive discharge claim. The Magistrate Judge decided that the court should "consider [Plaintiff's] claims [of conduct occurring] prior to September 5, 2014" based on the continuing violation doctrine and thereby recommended that the court find that "Plaintiff has provided sufficient evidence from which a jury could infer that she was subjected to unwelcome conduct because of her race and gender." (*Id.* at 16, 29.) In support of this conclusion, the Magistrate Judge

observed that Plaintiff's evidence sufficiently showed an objectively abusive, hostile environment that would compel a reasonable person to resign.  (*Id.* at 33–36.)

As to Plaintiff's claim for retaliation, the Magistrate Judge observed that Plaintiff failed to present sufficient evidence "as to what her various allegedly protected activities were, nor has she provided information sufficient to allow the court to discern her exact argument of what activity is causally tied to what adverse event."  (ECF No. 82 at 38.)  The Magistrate Judge further observed that "[t]he only protected activities within that time frame referenced by Plaintiff are her discussions with Investigator Townsend, her meetings with Varadi about her 2014 evaluation and her January 28, 2015 discussion with Plant Manager Ninh." (*Id.* at 39.)  In considering the foregoing, the Magistrate Judge concluded that Plaintiff "presented no evidence that these activities were causally related to any adverse employment action."  (*Id.*)  Accordingly, the Magistrate Judge recommended granting Defendant's Motion for Summary Judgment because  "Plaintiff simply has not provided prima facie proof that her discharge was caused by her protected activities." (*Id.* at 40.)

Finally, in regard to Plaintiff's EPA claim, the Magistrate Judge recommended that Defendant's Motion for Summary Judgment should be granted because Plaintiff's evidence as to her male comparators failed to demonstrate a prima facie case since (1) Derrick Dingus and Anthony Seamon did not have higher salaries than Plaintiff and (2) Bruce Grammer, Matthew Vaughn, Brian Cronin, Johnny Taylor, and Taft Gaymon did not hold jobs equaling the "effort, skill, and responsibility" of Plaintiff's job.  (ECF No. 82 at 44–48.)

B.    The Court's Review

In light of the foregoing analysis by the Magistrate Judge, the court considers the parties' objections relevant to each of Plaintiff's claims below.

1. *Hostile Work Environment based on Race and/or Gender*

In her first two causes of action, Plaintiff alleges that she was subjected to a hostile work environment on account of her race and gender. (ECF No. 1-1 at 22 ¶ 75–24 ¶ 90.) Because of this hostile environment, Plaintiff asserts that she suffered emotional stress to the point of causing illness, was paid less than white, male employees, was not promoted and was eventually constructively discharged.[3] (*Id.*)

a. **Legal Standard**

Title VII prohibits an employer from subjecting an employee to a hostile work environment. *See* 42 U.S.C. § 2000e-2(a)(1)[4]; *see also Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001). A plaintiff can establish a hostile work environment claim under Title VII either by directly showing that discrimination motivated an employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Kasznski v. Thompson*, 83 F. App'x 526, 527–28 (4th Cir. 2003). Pursuant to the burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its employment action. *Id.* If the defendant meets the burden to demonstrate a legitimate, non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Though intermediate evidentiary burdens shift back and

_____

[3] Despite the breadth of Plaintiff's allegations, there does not appear to be any dispute that Plaintiff's hostile work environment claim solely focuses on her constructive discharge.

[4] "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ." 42 U.S.C. § 2000e-2(a)(1).

forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

To state a prima facie Title VII claim for a hostile work environment based on race/gender, the plaintiff must demonstrate that: "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race []; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998)). A work environment is hostile when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted).

To meet the causation element, a plaintiff must show that "but for" the protected characteristic, he would not have been a victim of harassment. *See Causey*, 162 F.3d at 801. The "severe or pervasive" third element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003). First, a plaintiff must show that he "subjectively perceive[d] the environment to be abusive." *Harris*, 510 U.S. at 21–22 (1993). Second, a plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive.[5] *Oncale v. Sundowner Offshore Servs., Inc.*, 523

---

[5] When determining whether the conduct was objectively "severe or pervasive" courts look at the totality of the circumstances, which includes considering the frequency and severity of the conduct, as well as whether it unreasonably interferes with the work performance, is humiliating, or physically threatening. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)*. In*

U.S. 75, 81–82 (1998).

"[W]hen the workplace harassment or hostility leaves the victim with no other choice but to resign, the Supreme Court has recognized a variant of the hostile work environment claim known as '[a] hostile-environment constructive discharge claim.'" *Cronin v. S.C. Dep't of Corrs.*, C/A No. 3:11-471-MBS-SVH, 2013 WL 5315983, at *6 (D.S.C. Sept. 20, 2013) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)). "A showing of a hostile work environment 'is a necessary predicate' to establishing a hostile-environment constructive discharge claim." *Cronin*, 2013 WL 5315983, at *6 (citing *Suders*, 542 U.S. at 149). "As such, a hostile-environment constructive discharge claim encompasses elements of a hostile work environment claim as well as elements of a constructive discharge claim." *Id.*

To establish a constructive discharge resulting from a hostile work environment, a plaintiff must demonstrate two elements: "deliberateness of the employer's action, and intolerability of the working conditions." *Whitten v. Fred's Inc.*, 601 F.3d 231, 248 (4th Cir. 2010) (citations omitted). "To prove deliberateness, the plaintiff must prove 'that the actions complained of were intended by the employer as an effort to force the employee to quit.'" *Id.* (quoting *Martin*, 48 F.3d at 1354). "To act deliberately . . . requires intent . . . to force an employee to leave . . . [which] [i]ntent may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions, . . . ." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) (quoting *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984); *J.P. Stevens & Co., Inc. v. NLRB*, 461 F.2d 490, 494 (4th Cir. 1972)); *see*

_____

order for allegedly harassing conduct to be actionable, it "must be so extreme as to amount to a change in the terms and conditions of employment." *Id.* (Internal quotation and citation omitted). Isolated incidents that are not extremely serious and offhand comments do not meet this standard. *Id.* The court's task on summary judgment is to find "instances where the environment was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate," thereby creating an abusive atmosphere. *Id.*

*also Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1356 (4th Cir. 1995) (Employer may "prove her employer's intent by demonstrating that her resignation was the "reasonable foreseeable consequence" of the employer's conduct . . . ."). "Intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow*, 770 F.2d at 1255 (citations omitted).

In the Report and Recommendation, the Magistrate Judge recommended denying the Motion for Summary Judgment as to Plaintiff's hostile work environment claims because "Plaintiff's evidence, considered as a whole, provides sufficient evidence of conduct that a reasonable person in Plaintiff's position would have found to be hostile or abusive." (ECF No. 82 at 34.)

### b. Defendant's Objection

Defendant objects to the Report and Recommendation arguing that the Magistrate Judge erred in (1) determining that Plaintiff has presented evidence sufficient for a jury to determine whether she experienced a hostile work environment at IP" and failing to "correctly apply[] the heightened hostile environment standards applicable to a constructive discharge claim." (ECF No. 88 at 2.) In support of this argument, Defendant asserts that Plaintiff's evidence only demonstrates rude or boorish treatment that was neither race-based or sex-based nor severe or pervasive. (*Id.* at 13.) Moreover, Defendant asserts that the actions described in Plaintiff's evidence are "not sufficiently severe or pervasive to establish a hostile work environment, much less at the heightened standard of objective intolerability required for her hostile-environment constructive discharge claim." (*Id.* at 20.) Defendant further asserts that "no one at IP tried to get Plaintiff to resign, that no one at IP wanted her to leave, and that her working environment was not racially or sexually charged– much less at the heightened levels necessary to proceed on

a constructive discharge theory." (*Id.* at 2.) Therefore, "Defendant respectfully requests that the Court grant its Motion for Summary Judgment and dismiss all of Plaintiff's claim[s]." (*Id.* at 20.)

### c. Discussion

Plaintiff testified as follows regarding the hostile environment existing at the Eastover Mill:

> He [Brian Cronin] was very intimidating. He said a lot of offensive things around my hair texture. He would oftentimes try to correct what I'm saying, saying I'm using a different dialect, as well as also making jokes and gestures about my education and creating barriers anytime I'm communicating anything to the group.

(ECF No. 71-1 at 11:84:13–19.)

> The hostile environment, the comments that was made about my hair, my natural texture; sending e-mails trying to get response and trying to work with them. There was no response or lack of response. The comments in my CSA directing back to comments that was in finished products, and tried to look for different opportunities. There was no support to help move me in other roles because the environment was not suitable. Put in for those roles and did not succeed. Stayed a technical quality leader, and the same conditions continued on, and I did what anyone else would do as well.

(Id. at 25:137:24–138:11.)

> The other conversation was about the environment. I told him the environment is very uncomfortable. It's stressful. It's hostile. There is no support. It's not a win-win. And I went through several examples of the comments that was being said from finished products. The lack of inclusion, the comments around my natural hair, the comments around my afro. I pointed out different events through the customer visits, through troubleshooting, through representing of being part of a business meeting, like, for instance, this envelope, and told him that it is unbearable and it is not a win-win.

(ECF No. 71-1 at 42:168:19–33:169:8.) Additionally, in her summary judgment opposition brief, Plaintiff asserted that the following acts were discriminatory in nature:

- Around September 2014 Brian Cronin told Evans her natural hair was unprofessional and made her look older. (Complaint ¶ 50).

• Evans had a one on one meeting with Hai Ninh ("Ninh"), the Eastover Mill Manager, about wanting to promote to a new position. Ninh informed Evans that she needed a black belt certification. However, none of the white males in similar management positions had a black-belt certification. When Evans asked Ninh about why none of the white males had the certification, she did not receive a response. (Complaint ¶ 56).

• Evans further attempted to reach out to Patrich to inquire about what IP looks for in applicants for manager positions. Patrich dismissed Evans' request and pointed her to the job positing. (Complaint ¶ 57).

• Evans' supervisor, Paul Var[a]di discouraged Evans from applying for managerial positions despite her excellent work record. (Complaint ¶ 58).

• Evans applied for two managerial positions and was denied from both. (Complaint ¶ 59).

• Evans received a "meet" expectations on her January 2015 performance review. Evans' superiors told Evans she did not work with other employees enough and that is why she received the "meet" marking. However, Evans was excluded by her co-workers because of her complaints about the work environment. (Complaint ¶ 60).

• In January 2015, Evans once again reported comments to Ninh about her natural hair, the lack of inclusion compared to her white, male coworkers, and continued mistreatment by her white, male co-workers. Once again, her complaints were ignored. (Complaint ¶ 62).

• In February 2015, a white, male manager approached Evans and told her that her nickname was Angela Davis because of her natural hairstyle. (Complaint ¶ 66).

• In February 2015, Evans was excluded from hiring meetings even though hiring for her department was well within her job responsibilities. (Complaint ¶ ¶ 67-68).

• In March 2015, Evans was constructively discharged because of the continuous race and sex discrimination and the hostile work environment created by the constant discrimination. (Complaint ¶ 69).

(ECF No. 71 at 15–16.)

The court observes that the merit of Plaintiff's cause of action for hostile work environment based on race and gender is dependent on the sufficiency of the foregoing evidence to support her demonstration of the "severe or pervasive" third element of a prima facie case. Upon its review, the court does not have any doubt that Plaintiff subjectively perceived her environment to be hostile and abusive. However, the court is required to go a step further and also must find that this evidence was such that "a reasonable person in the plaintiff's position"

would have found the environment objectively hostile or abusive. *Oncale*, 523 U.S. at 81–82. After considering all of the above allegations and the totality of the circumstances as demonstrated by the evidence presented by Plaintiff, the court cannot conclude that Plaintiff has met her burden of establishing that the alleged treatment she received was objectively severe and pervasive to alter the conditions of employment and create an abusive atmosphere. *See, e.g.*, *Venton v. Million Dollar Round Table*, No. 13-CV-7725, 2015 WL 3777543, at *4 (N.D. Ill. June 16, 2015) (while comments relating to the plaintiff's hair, including: "what do black people use in their hair," "is your hair kinky," "what is the grade of your hair," and "do black people need to wash their hair every week," arguably had a racial component, but "without the traditional hallmarks of impermissible racial harassment such as slurs, epithets, or overt racial animus or intimidation do not necessarily amount to discrimination . . . . Here, the incidents were not pervasive, occurring over a span of years, which dilutes their offensive effect and diminishes their severity.") (internal citation omitted).

"[P]laintiffs must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. "[I]ncidents that would objectively give rise to bruised or wounded feelings [like the ones described by Plaintiff] will not on that account satisfy the severe or pervasive standard." *Id.* Specifically, claims based on "rude treatment by [coworkers] . . . callous behavior by [one's] superiors, . . . or a routine difference of opinion and personality conflict with [one's] supervisor are not actionable under Title VII." *Id.* (internal quotations and citations omitted). In this regard, the court finds that Plaintiff has not presented sufficient evidence to raise a genuine issue of fact as to whether she was subjected to an objectively hostile work environment based on her race or gender in violation of Title VII.

Moreover, "[b]ecause the court finds that Plaintiff cannot satisfy the elements of a hostile

work environment claim, which is a necessary predicate to establishing a hostile-environment constructive discharge claim, Plaintiff's hostile-environment constructive discharge claim necessarily fails." *Cronin*, 2013 WL 5315983, at *15 (D.S.C. Sept. 20, 2013) (citing *Helton v. Southland Racing Corp.*, 600 F.3d 954, 960 (8th Cir. 2010) (recognizing that because a plaintiff "failed to show that she was subjected to a hostile environment . . . it necessarily follows that she cannot show 'something more' "to sustain a claim for hostile-environment constructive discharge")). "A hostile-environment constructive discharge claim involves a more demanding showing with regard to the severity of the conduct, and the evidence presented by Plaintiff, taken in the light most favorable to Plaintiff, does not show such intolerable conduct." *Id.* (citing *Spencer v. Wal–Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006) (noting that "[a] hostile work environment will not always support a finding of constructive discharge" because proof of constructive discharge requires "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment") (internal quotations omitted)).

Based on the foregoing, the court sustains Defendant's objection to the Magistrate Judge's Report and Recommendation. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claim for hostile work environment based on her race and gender is granted.

### 2. *Title VII Retaliation*

In her third cause of action, Plaintiff alleges that she was retaliated against for engaging in actions protected by Title VII. (ECF No. 1-1 at 25 ¶ 92.)

### a. **Legal Standard**

Title VII protects individuals from retaliation. *See* 42 U.S.C. § 2000e-3(a).[6] More

---

[6] "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by

specifically, "[a]n employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)). "Although Title VII does not protect general complaints of unfair treatment, 'an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct.'" *Hemphill v. United Parcel Serv., Inc.*, 975 F. Supp. 2d 548, 551 (D.S.C. 2013) (internal and external citations omitted).

In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method. Under the burden-shifting method, to demonstrate a prima facie case of retaliation under either Title VII or the ADA, a plaintiff must show (1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action. *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001). If the plaintiff establishes a prima facie case of retaliation, the defendant can rebut the presumption of retaliation by articulating a non-discriminatory reason for its action. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001) (citation omitted). At that point, the plaintiff has the opportunity to prove that the employer's legitimate, non-discriminatory reason is pretextual. *Id.*

In the Report and Recommendation, the Magistrate Judge determined that Plaintiff's

---

this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

retaliation claim fails because she neither specified in what protected activity she engaged nor presented evidence "that these activities were causally related to any adverse employment action." (ECF No. 82 at 38–39.)

### b. Plaintiff's Objection

In her Objections, Plaintiff argues that the Magistrate Judge erred in finding that Plaintiff was not retaliated against for her engagement in the following protected activities: (1) her comments about Nyman to Human Resources Manager Townsend in October 2014; (2) when her communications with Varadi in January 2015 regarding issues relevant to her 2014 CSA evaluation and (3) her discussion with Ninh in January 2015. (*See* ECF No. 89 at 5.) Plaintiff further argues that there is an issue of fact regarding Barfield's knowledge of her protected activities and whether his decision to give Plaintiff a nickname based on a "Black Panther" Angela Davis should be considered an adverse employment action. (*Id.* at 6–8.)

### c. Discussion

Upon review, the court observes that viewing the evidence in the light most favorable to Plaintiff, she has demonstrated that she engaged in protected activity. However, the court is not persuaded that Plaintiff suffered an adverse employment action. Plaintiff asserts that Defendant took the following adverse employment actions against her: "Evans was treated worse in the workplace by the white male managers in the FPD, Evans was constantly left out of meetings, and she was given a 'meets' on her 2014 CSA evaluation with some negative feedback that related to Evans treated by the white male managers in the FPD." (ECF No. 71 at 31.) Additionally, Plaintiff asserts that she suffered an adverse employment action when she was nicknamed Angela Davis. (*Id.* at 32; *see also* ECF No. 89 at 6–8.)

"An adverse employment action is a discriminatory act which adversely affects the terms,

conditions, or benefits of the plaintiff's employment." *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). "The question to be asked in deciding whether there has been an adverse employment action is 'whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.'" *Burdine v. Greenville Tech. Coll.*, C.A. No. 6:08-cv-03764-JMC, 2010 WL 5211544, at *8 (D.S.C Dec. 16, 2010) (quoting *Page v. Bolger*, 645 F.2d 337, 233 (4th Cir. 1981)). "Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'" *Sancho v. Anderson Sch. Dist. Four*, (D.S.C. Aug. 3, 2016) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)).

The court considered Plaintiff's contentions and finds that the conduct identified cannot be equated with the foregoing types of actions that are considered to be adverse. As to the treatment Plaintiff alleges that she received, snubbing by supervisors and co-workers is not an actionable materially adverse event. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."); *see also,* e.g., *Shannon v. Va. Dep't of Juvenile Justice*, C/A No. 3:06CV413, 2007 WL 1071973, at *4 (E.D. Va. Apr. 4, 2007) ("The bulk of the alleged retaliatory actions (*i.e.*, removal from employee directory, opened mail, removal of nameplate, closed email account, monitoring, and unfriendly treatment by co-workers) fall into the 'petty slights' and 'minor annoyances' category. The remaining allegations (*i.e.*, transfer from Hampton Office, false statements, and transfer to the Gang Unit) do not cross the 'materially adverse' threshold.").

As a result of the foregoing, the court agrees with the Magistrate Judge that Plaintiff cannot state a prima facie case of retaliation and therefore overrules Plaintiff's objections. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### 3. *Pay Discrimination in Violation of the EPA*

In her fourth cause of action, Plaintiff asserts that she "was paid less than male employees even though she performed substantially equal work" in violation of the EPA. (ECF No. 1-1 at 26 ¶ 98.)

### a. **Legal Standard**

To establish a *prima facie* case under the EPA, the plaintiff must demonstrate: (1) that the employer has paid different wages to employees of opposite sexes, (2) for equal work in jobs, which require equal skill, effort, and responsibility, and (3) which are performed under similar working conditions. *See Gustin v. W. Va. Univ.*, 63 F. App'x 695, 698 (4th Cir. 2003) (quoting *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 613 (4th Cir. 1999)). "Additionally, the plaintiff must identify a particular male 'comparator' for purposes of the inquiry, and may not compare herself to a hypothetical or 'composite' male." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 948 (4th Cir. 1995) (citing *Houck v. Va. Polytechnic Inst.*, 10 F.3d 204, 206 (4th Cir. 1993)).

Once a plaintiff establishes a *prima facie* case of salary discrimination, the burden shifts to the employer to prove, by a preponderance of evidence, that the pay differential is justified by the existence of one of the four statutory exceptions set forth in § 206(d)(1): (1) a seniority system, (2) a merit system, (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. *See Strag*, 55 F.3d at 948 (citing *Houck*, 10 F.3d at 207). "If this burden is successfully carried by the employer, the

plaintiff's claim must fail unless the plaintiff can satisfactorily rebut the defendant's evidence."
Id.

In the Report and Recommendation, the Magistrate Judge recommended granting Defendant's Motion for Summary Judgment because Plaintiff's evidence as to her male comparators failed to demonstrate a prima facie EPA case. (ECF No. 82 at 44–48.)

### b. Plaintiff's Objection

Plaintiff argues that the Magistrate Judge erred regarding the EPA claim because her recommendation fails to either "factor in the Human Resource Manager's credibility in the light most favorable to Plaintiff" or hold Defendant accountable for failing to produce requested information regarding similarly situated co-workers Dingus, Seamon, Grammer, Vaughn, Cronin, Taylor and Gaymon. (ECF No. 89 at 9–11.) Accordingly, Plaintiff requests that the court deny the Motion for Summary Judgment as to her EPA claims. (*Id.* at 11.)

### c. Discussion

In her Objections, Plaintiff mainly suggests that the Magistrate Judge was predetermined "to reject Plaintiff's [EPA] claim through the testimony of Defendant's Human Resource Manager." (ECF No. 89 at 8, 9 & 10.) Moreover, she complains that her evidence would have been better if not for Defendant's failure to disclose specified information. (*Id.* at 9, 10.)

Upon review, the court observes that at this stage of the matter, Plaintiff as the nonmoving party is required to possess sufficient evidence demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). In this regard, Plaintiff's Objections fail to address the evidentiary deficiency cited by the Magistrate Judge in the Report and Recommendation, *i.e.*, that Plaintiff's evidence as to her male comparators does not demonstrate a prima facie EPA case because (1) Derrick Dingus and Anthony Seamon did not have higher salaries than Plaintiff and

(2) Bruce Grammer, Matthew Vaughn, Brian Cronin, Johnny Taylor, and Taft Gaymon did not hold jobs equaling the "effort, skill, and responsibility" of Plaintiff's job. (ECF No. 82 at 44–48.) Therefore, because Plaintiff cannot show that Dingus, Seamon, Grammer, Vaughn, Cronin, Taylor and/or Gaymon are proper comparators under the EPA, she cannot establish a prima facie case of an EPA violation. Accordingly, the court overrules Plaintiff's objection and finds that Defendant is entitled to summary judgment on Plaintiff's claim alleging violation of the EPA.

## V. CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the Motion for Summary Judgment of Defendant International Paper Company as to all Plaintiff's claims. (ECF No. 64.) The court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 82) and incorporates it herein by reference. The court accepts the recommendation as to Plaintiff's claims for retaliation and for violation of the Equal Pay Act of 1963. The court rejects the recommendation as to Plaintiff's claim for hostile work environment based on race and gender.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

March 31, 2018
Columbia, South Carolina